Argued January 24; affirmed March 13, 1934

BODDING *v.* STAEHLI ET AL.

(30 P. (2d) 3)

*Joseph F. Hodler,* of Portland (Frank C. Hanley, of Portland, on the brief), for appellant.

*Frank H. Hilton,* of Portland, for respondents.

KELLY, J. Plaintiff's decedent, A. Neppach, was the owner of a parcel of land consisting of 1.85 acres on Portland Heights abutting on the Dosch road. Defendants, seeking to build a residence and establish a home, secured the services of mechanics and caused a home to be erected thereon pursuant to plans and specifications furnished by an architect selected by plaintiff's decedent. Defendants thereupon went into possession of said property.

Thereafter, on the 8th day of November, 1928, plaintiff's decedent and defendants executed a written contract wherein plaintiff's decedent agreed to sell and defendants agreed to purchase said property.

Defendants agreed to make payments of interest quarterly; and to pay $500 on the 8th day of November, 1929; and on the 8th day of November of each year thereafter, until the unpaid balance of the purchase price should be fully paid. The purchase price was $10,286.19. Defendants assumed a $4,000 mortgage, and the balance above mentioned represented the difference between the total purchase price and the amount of said mortgage to which difference was also added $57.50 by reason of expense incurred in procuring said mortgage.

The usual provision of forfeiture and right of re-entry in case of failure to make prompt payment was contained in said contract.

The question presented by this record is whether plaintiff's decedent exercised his right of reentry and thereby assented to a rescission of said contract.

Defendant, Ralph J. Staehli, testified that on the occasion when he paid plaintiff's decedent the first quarter's interest, an argument ensued about all their affairs and plaintiff's decedent told witness that the contract had nothing to do with their other arrangements, that the payments on it would have to be made when due.

Said defendant also testified that later in June or July, 1929, a similar conversation was had, wherein plaintiff's decedent said that if defendant couldn't make the payments stipulated in the contract, that he, decedent wanted to have the house back; that decedent had to have either $500 in November or the house.

Said defendant further testified that again in July or August, of 1929, plaintiff's decedent said that he wanted one of two things, he either wanted that contract lived up to or he wanted the house.

On the 29th of October, 1929, said defendant addressed a letter to plaintiff's decedent advising him that it would be necessary for defendant to relinquish the contract on the Dosch road property on November 8, 1929. That letter contained the following clause: "Unless you wish to make other arrangements, I will forward the keys to you on or before that date." The alternative of paying a nominal rent was also suggested. A request was made therein that decedent acknowledge that letter by November 1st, and the statement was made that otherwise defendant would make plans to vacate the property immediately.

Said defendant, answering the question of his counsel as to whether he heard anything from decedent after mailing that letter, testified:

"A. I heard from him by phone, it must have been just about the first of the month of November. He called me at the Heathman Hotel and said he wasn't interested in renting the house—that he had gotten the letter, he wasn't interested in renting the house, he wasn't interested in anything except the possession of that property, that if he couldn't make the payment, it was too bad for me, he knew I had a lot of money in there, but a contract was a contract and he wanted the five hundred dollars or the house. I said, 'How about renting the house for the time being, anyway?' He said, 'I am not interested in renting. You know what the deal is.' He also said, 'You stated in the letter that you had paid the taxes up to date.' I said, 'That was a mistake. I paid everything except the ones due.' He said, 'What are you going to do about it?' I said, 'I have told you I cannot raise the money and I cannot make the payment on November 8th.' He said, 'Never mind about the rest of it then. Be sure to turn the key over to me,' and I agreed I would bring the keys down to his place. But unable to do that, I finally moved out of the house and sent the keys back to him, told him where they were."

The information as to the keys was communicated to decedent by a letter from said defendant written at Grants Pass on November 9, 1929, saying:

"The keys to the house are left in your name at the St. Francis Hotel, 11th and Main, Portland. I could not clean it up because of time but fuel and supplies left will amply compensate you."

Mrs. Frances S. Brooke was called as a witness in behalf of plaintiff, and, on cross-examination, testified that shortly after defendants left, plaintiff's decedent asked her to try to sell the property and sent her the key. At first, the price for which the property was thus offered was $12,000. Later, decedent authorized its sale at $10,000.

Mr. A. F. Biles, father of defendant, Clarice B. Staehli, testified that after November 8, 1929, decedent called at Biles' office, said that he, decedent, had taken the property over and suggested that witness and decedent go in together and further improve the property.

Mr. Biles also testified that, owing to impaired vision, decedent was unable to drive a car and sometime during the spring of 1930, at the instance of decedent witness drove in witness' car to the property in suit taking as passengers decedent and two other gentlemen, one of whom was a prospective buyer and the other an agent acting for decedent, at which time decedent offered said property for $11,000.

Subsequent to November 8, 1929, decedent paid the $4,000 mortgage referred to in said contract of sale.

To rebut the foregoing testimony, which tends to show that decedent assented to a rescission and took possession of said property, a letter was introduced from decedent to defendant, R. J. Staehli, bearing

date January 30, 1930, the contents of which are as follows:

"Sometime ago, I received a letter from you in which you stated that you intended to relinquish the contract on the house which I sold you on the Dosch Road and which you have been occupying for some time.

"I would have answered before, but I understood that you had been out of town.

"As you know, I financed this property for your sole and exclusive benefit and as a friendly act and I do not propose to allow you to terminate the contract by walking out and leaving me holding the sack.

"I, therefore, wish to inform you that unless you promptly comply with your contract of the 8th of November, 1928, I shall be compelled to bring such action against you as may be proper and this is notice to that effect.

"I might say in addition that the taxes will soon be due for the year 1929. You occupied the house for nearly the entire year. You have added on to the mortgage, the $77.50 commission paid to obtain the loan of $4,000.00, that I received from the said company, the amount being $3,942.50 which you have promised to pay and instead of paying same, you tacked it onto the mortgage. Your tacking it onto the mortgage does not pay the debt.

Yours very truly,<br>A. Neppach."

Said defendant equipped himself with a pencil capable of making an impression in the color appropriate to the mood, then controlling him, and with it wrote across the face of said letter the following interesting if not exceedingly refined endorsement:

"I always did enjoy a good joke. I hope your lousy dollars give you the pleasure you deserve. Anytime you pay me first what you owe me, I'll talk to you about the house."

We are fully mindful that the lips of one party to the contract in suit have been sealed by death, while the other parties thereto still live, and, living, continue to speak and write. We are reluctant to hold adversely to those who no longer may speak for themselves; but upon this record we think that the learned and experienced trial judge committed no error when he held that there had been mutual rescission of said contract, which precluded a recovery thereon in favor of plaintiff.

We think that decedent took possession of the property by accepting the key and thereafter exercising dominion and ownership over the property. Such conduct was in effect a concurrence in the rescission of the contract; and operated as a relinquishment of decedent's right to the unpaid purchase money. Thereafter, decedent could not change his position and hold defendants liable to complete the purchase or pay any part of the unpaid purchase money: *Gray v. Mitchell,* 145 Or. 519 (28 P. (2d) 631).

The judgment of the circuit court is affirmed.

RAND, C. J., ROSSMAN and BELT, JJ., concur.